The **MAGNAVOX COMPANY** and **Cyrus E. Hoekstra** and **John C. Radcliffe**, Plaintiffs,

v.

The **MUTER CO.**, Substituted for **Rola Company**, and **Francis B. Smith**, Defendants.

Civ. No. 31013.

United States District Court
N. D. Ohio, E. D.

Dec. 18, 1956.

John F. Oberlin, Cleveland, Ohio, Ralph G. Lockwood, Indianapolis, Ind., for plaintiffs.

Bates, Teare & McBean, Cleveland, Ohio, for defendants.

JONES, Chief Judge.

This case was submitted, after full hearing and oral argument, on December 5, 1956.

Plaintiffs brought suit under favor of Chapter 13, Section 146, and Chapter 29, Section 291, United States Code Title 35, having lost in an interference proceeding where patent claims originally issued to Hoekstra were awarded to Smith in re-issue No. 238,790.

While not admitting the correctness of the Patent Office decision in the interference, the plaintiffs' main effort here is directed to their challenge of the validity of claims 6 and 7 of the Smith reissue, originally issued to Hoekstra as claims 6 and 9.

The race in the loud speaker development was a competitive one and it is difficult to say whether it should go to the swift or, in fact, whether any of the parties won the race.

The defendants, in addition to their response to the asserted invalidity of the Smith reissue, counterclaim with the charge of infringement by plaintiffs of its Knowles Patent No. 2,469,773, not related to the main patent in issue, but directed to a component element in loud speaker assemblies.

It will not be possible for the court to discuss and resolve the issues and the validity of the patents and claims in suit by use of the precise terms of the component parts or elements in the loud speaker assemblies. It will be sufficient to set down my findings and conclusions on the issues involved. I have examined the patent drawings, colored charts and numerous exhibits of structures and various component parts or elements introduced and referred to during the trial.

The Smith reissue patent in suit "relates to a loud speaker of the permanent magnet type employing a hollow shell of magnetic material carrying an annular pole ring and a permanent magnet extending within the ring and spaced from it leaving an annular space occupied by the voice coil. The object of the invention is to obtain a maximum and uniform distribution of flux between the permanent magnet and the pole ring.

"A further object is to provide a rugged construction of magnetic assembly which will withstand severe shocks without affecting the performance of the speaker. My magnetic assembly is also adapted for embodiment in the very simple and compact construction which will have a minimum of overall depth and still give the requisite performance."

Claim 6, lifted verbatim as the result of the interference proceeding from Hoekstra's patent 2,554,859, provided, among other features:

"a magnetically soft iron pole piece comprising a circular disc having flat parallel front and back fact surfaces and an external cylindrical pole surface terminating in parallel annular edges at said face surfaces; said pole piece being concentric with the voice coil aperture and positioned within the voice coil aperture with the rear face surface of the pole piece spaced forwardly from the rear face of said pole plate."

Thus is presented, in essence, a new design, the sole object of which, as I see it, was to produce a speaker shorter in axial length.

The purpose of Smith concededly was to furnish a structure of reduced dimensions in the loud speaker design as desired by Philco customers. What was wanted was a small, compact unit for a limited space, such as automobiles.

While I understand that Smith, in his reissue claims, was not concerned with the improvement in tone quality and volume of the speaker, yet he necessarily had to maintain tone quality and volume if the users were to be satisfied. The problem then was, as I earlier characterized it, to accomplish a reduction in size of the structure and component parts to suit the requirements of the users without impairing its efficiency or successful production of the desired tone quality and volume. This, the defendant claims, Smith accomplished in a new and original way; but differences in measurements, or thickness of materials, or design of structures such as here considered do not rise to invention, nor, likewise, do size and cost. To the lay eye and understanding there was no real improvement or advance beyond physical requirements of the users and this did not constitute invention.

In considering such highly technical matters as presented here, the court is, to a large degree, compelled to lean upon the experts whose appraisals and analyses of the inventive character of the challenged claims impress the court as the more convincing. From a consideration of such testimony, and drawing findings and conclusions therefrom, it seems to me that all elements embodied in the defendant's structures have been present in earlier patents of structures designed for, and directed to the loud speaker art.

So far as I can understand, the defendant's expert was unable to point out more than one element claimed to be novel over the prior art patents and structures. This element, he claimed, was more than a dimensional feature, but constituted a relative proportioning and functional difference. This, however, I think to be a difference without distinctive patentable novelty.

I can find nothing new of an inventive character in defendant's claims in issue, and nothing which had not been adequately disclosed in prior patents in the same field. There may be a difference in several respects, but without patentable distinction.

Engineering skill, based upon experience and experimentation, or, bluntly stated, trial and error,—accounted for the change or so-called improvement over the known art, rather than conception of an inventive character. The notebooks of the patentee, containing data relating to tests and experimentation, justify this characterization.

■ It seems to me that substantially every element and component part in the Smith structure has been known and shown in the prior art before Smith.

■ The Knowles Patent 2,469,773 called for a circular corrugated and flexible piece of fabric, impregnated with a stiffening agent. These were the characteristics of the invention which consisted of a centering member for filtering out dust while allowing air to pass through so as not to impair the diaphragm action. Although challenging validity, plaintiffs chiefly rely on non-infringement as a defense.

I have considerable doubt as to the patentable novelty of Knowles, but prefer to uphold it under limited construction to which I think it entitled.

If we hold the patentee to the claims as to distributed perforations, then an inherently porous diaphragm, or central support member, such as exhibited here as the defendants' product, does not infringe and a combination of Bowdette and Jensen, with Farrow, require a narrow construction of Knowles' claims.

I regard the Patent Office examiner's objection, or rejection, of the claims for "inherently porous" and the substitute amendment of "distributed perforations" as having placed a limitation on claim 7 which must be construed not to include the type of centering member or diaphragm used by the plaintiff. The examiner evidently concluded that "inherently porous" is something other and different than "distributed perforations", and so they seem to be to me.

While perhaps it may be the rule that the patentee may point out what he believes to be an erroneous finding by the examiner, nevertheless, the acceptance of

and acquiescence in the examiner's ruling by the patentee precludes him from asserting the original claim, or some other modification of the original, such as the commercial product of the defendant. The dual purpose fabric filter as disclosed by the Knowles patent and drawing was not the spider commercially produced by the defendant.

In such circumstances it is my judgment that the plaintiffs' commercial filter does not infringe the Knowles patent.

Judgment for plaintiffs on the Smith patent held invalid, and as to the Knowles patent held valid but not infringed.

This memorandum is considered to be compliance with Rule 52(a), 28 U.S.C.A.